## In re BURKE, INC., Personal Mobility Vehicle Patent Litigation.

### MDL No. 809–JSL.

United States District Court,
C.D. California.

Jan. 8, 1992.

James S. Wallace, Jr., Wiley, Rein & Fielding, Washington, D.C., for plaintiff.

John E. Kelly, Kelly, Bauersfeld & Lowry, Woodland Hills, Cal., for defendants.

## OPINION

LETTS, District Judge.

Before the Court is plaintiff Burke, Inc.'s motion to reconsider the directed verdict granted in favor of defendants Everest & Jennings, Inc. and Invacare Corp. Defendants moved for the directed verdict at the close of plaintiff's evidence. In its case-in-chief, Burke introduced U.S. Patent No. 4,570,739 (the "patent") into evidence. Plaintiff also presented evidence intended to show that the patented invention represented a nonobvious departure from the prior art, and that defendants infringed the patent. Defendants urged that the evidence demonstrated both that the patent is invalid, and that, even if the patent were valid, it was not infringed by defendants' products. The Court, having heard the arguments, considered the papers, and reviewed the evidence in the case, hereby rules that plaintiff's motion is denied.

## I. Validity

The patented invention is a three-wheeled personal mobility vehicle. Plaintiff admits that all of the individual elements of Claim 1—the only claim at issue here—were known in the prior art. Duwayne Kramer, who is both the general manager of plaintiff and the inventor under the patent, testified as follows:

Q. Have you ever claimed to have invented these components?

A. No, sir.

Q. What is it you regard as your invention, Mr. Kramer?

A. My invention are (sic) the elements in the sequence of claim 1.

Trial Transcript, vol. 3, p. 154.

Defendants do not contest that the combination of elements found in Claim 1 is "novel" enough to satisfy 35 U.S.C. § 102. They contend, however, that Claim 1 does not meet the standard of "nonobviousness" imposed by 35 U.S.C. § 103. Defendants further argue that the patent claims fail to disclose the patented invention as required by 35 U.S.C. § 112.

### A. *Nonobviousness*

■ Like all claims upon which a patent has been issued, Claim 1 is presumed to be valid. 35 U.S.C. § 282. After preliminary determination of factual issues, the question of obviousness is a matter of law for the court. *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1137 (Fed.Cir. 1985). Before it may hold a patent invalid a district court must find by clear and convincing evidence that the patented invention is obvious in light of the prior art. *Id.* at 1139.

■ The Court is aware, of course, that as to validity, the law makes no distinction between claims embracing a novel combination of elements already well known and claims incorporating elements allegedly unknown in the prior art. *Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540 (Fed.Cir.1984). The Court is also mindful of the repeated admonitions of the Federal Circuit, that District Court judges should not lightly consider their own technical expertise superior to that of the patent office.

Plaintiff does not seriously contend, however, that there is anything technically difficult about the manner in which the novel combination of the elements of Claim 1 is achieved. In fact, the technical skill involved in achieving the claimed combination is obvious to the point of being trivial. Analysis of the patentability of the Kramer invention therefore does not require this Court to choose between differing expert views of the technology involved.

In *John Zink Co. v. National Airoil Burner Co.*, 613 F.2d 547 (5th Cir.1980), the Court accurately summarized the law of nonobviousness in the combination patent context:

The combined elements must perform a new or different function, produce "unusual or surprising consequences," or cause a synergistic result. *Anderson's–Black Rock, Inc. v. Pavement Salvage Co.*, 396 U.S. 57, 61, 90 S.Ct. 305, 308, 24 L.Ed.2d 258 (1969); *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.*, 340 U.S. [147] at 151–53, 71 S.Ct. [127] at 129–30 [95 L.Ed. 162]; *Parker v. Motorola, Inc.*, 524 F.2d [518] 534 [ (5th Cir.1975) ].

613 F.2d at 551.

■ What plaintiff alleges to be nonobvious (or, as older cases often put it, "inventive") about Claim 1 is not the technical matter of *how* it effectuates the claimed combination, but the "new or different function" the novel combination of elements performs. Had the trial gone forward, defendants no doubt would have sought to introduce evidence showing that the claimed combination did not yield any new or different function. Since the issue is drawn over a directed verdict, however, the Court will consider the question on the face of the patent, and on the basis of the evidence presented by plaintiff. That evidence does not clearly convince the Court that the invention was obvious such that it would be unpatentable under 35 U.S.C. § 103.

The "Background of the Invention," contained in the patent specification, makes

clear how Kramer considered that his invention performed a "new or different function" by reference to the prior art. According to the specification, the prior art contained numerous front-wheel drive vehicles "separable into component parts which are light enough to be easily lifted for placement in an automobile trunk for transportation to other sites of use." Patent, pg. 6. The limitation of such vehicles, according to the inventor, is that because the weight is concentrated toward the back of the vehicle, "[W]hen there is resistance to motion of the vehicle as in ascending ramps, the driven front wheel simply spins." Patent pg. 6. At trial, Kramer amplified his thinking further, observing that this distribution of weight tends to limit front-wheel drive units to indoor use, and observed that "People really needed something to get outside and be safe with ..." Trial transcript, vol. 2, pg. 24.

Kramer also acknowledged in the patent specification that a rear-wheel drive vehicle existed in the prior art. This vehicle provided the flexibility of use not found in the prior art front-wheel drive vehicles, but each of the rear wheels was driven by a separate motor, with a separate battery. Patent, pg. 6. As a result, such units were "substantially heavier" and thus "generally restricted to a single site use unless transport means such as a van with a lift platform is available." Patent, pg. 6.

In summary, what the patent specification discloses as the new or different function flowing from the claimed combination is (1) flexible use both indoors and outdoors at particular sites ("flexible use"), *and* (2) convenient separation into components small and light enough for easy transportation from site to site ("portability"). The court agrees with plaintiff that this result of his combination was not shown by clear and convincing evidence to have been obvious by the evidence already in the case at the time of the motion for directed verdict.

### B. Size and Weight Limits

The question then becomes whether Claim 1 discloses this nonobvious invention with sufficient definiteness to satisfy the requirements of 35 U.S.C. § 112.

It requires no skill in the art to recognize that the inventive difference (portability in a flexible use vehicle) produced by the combination of the elements of Claim 1 is inherently limited by size and weight. For example, a massive vehicle weighing a ton or more would be neither portable nor flexible for individual use.

A simple reading of Claim 1 discloses that the inherent limitations of size and weight, outside of which the inventive character of the patented invention is lost, are not set forth in the claim's elements. Defendants would have the Court conclude the analysis at this point, and hold that Claim 1 is invalid for indefiniteness.

It does not necessarily follow, however, that because the invention is inherently limited by size and weight, that size and weight limitations must be specifically quantified and included as express limitations of the elements of the combination. Absent any suggestion that the inventor intended expressly to limit the claimed elements, it might be argued that the limitations of size and weight inherent in the invention operate within a range of sizes and weights which would be readily understood by anyone skilled in the art. Arguably, therefore, it would follow that anyone skilled in the art who wished to reduce the patent to practice would have no difficulty in designing a vehicle outside the range of size and weight parameters inherent in the invention. The designer of a one-ton vehicle, therefore, might rest untroubled by the Kramer patent, even though the Kramer claims do not mention size or weight.

 That this patent would be valid if it were entirely silent as to the size and weight parameters of the invention, however, is not free from doubt. To be valid under 35 U.S.C. § 112, a patent must not only disclose the invention, it must also do so in a way which is sufficiently definite to put others on notice of the limits of what is claimed. *In re Vamco Mach. and Tool, Inc.*, 752 F.2d 1564 (Fed.Cir.1985). Size and weight are *relative* concepts. Things may meaningfully be described as "large"

or "small," "heavy" or "light," only by relation to other things. It is not at all clear simply from reading the elements of Claim 1 at what sizes or weights the inventor would concede that the separable components of a later vehicle would fall outside of the invention. At some point, though, it would seem beyond dispute that the inventive feature of portability would be lost.

The point at which the claimed elements would fail to disclose the limits of the invention is not something which can be determined by mere application of skill in the art. Because it is instead a matter on which people equally skilled in the art might have different, and equally valid, opinions, the case that the inventor must specify the limits of what is claimed is a strong one.

In fact, Claim 1 does not leave these matters open. The preamble to Claim 1 states expressly that the claimed elements comprise a "personal mobility vehicle." While the preamble is not normally considered part of the claim, it is deemed part of the claims where necessary to breathe "life and meaning" into the claims. *Corning Glass Works v. Sumitomo Electric U.S.A.*, 868 F.2d 1251 (Fed.Cir.1989). "The effect preamble language should be given can be resolved only on review of the entirety of the patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim." *Id.* at 1257. Here review of the entirety of the patent discloses that the very essence of the invention is that the novel combination of elements produces a "personal mobility vehicle" which is more flexible in use, and more easily portable, than personal mobility vehicles found in the prior art.

Kramer testified, in fact, that he himself coined the term "personal mobility vehicle" for use in his patent. Trial transcript, vol. 2, p. 177. Indeed, he repeatedly testified that the term has limits not found within the elements of Claim 1, including the width (narrower than an ordinary household door), and the number of seats in the vehicle (one). Trial transcript, vol. 2, p. 172.

When one looks to the patent specification for a specific definition of the term "personal mobility vehicle", as used in claim 1, one finds a definition which has the missing parameters of weight and size. In the "Summary of the Invention," Kramer provides the following definition:

> The personal mobility vehicle according to the present invention comprises a drive unit, a floor plan unit, a seat unit, and a battery pack *with each component weighing less than thirty pounds and being compact such that the vehicle is conveniently separated into components for lifting into the trunk of an automobile or placement in another vehicle for transportation to other sites.* (Emphasis added)

Patent, p. 6.

Here there is no doubt. The inventor has eliminated the very questions about which people equally skilled in the art might reasonably differ. In his definition of a personal mobility vehicle "according to the present invention," Kramer provides clear notice to those skilled in the art of the size and weight parameters of what he considers to be his invention. In doing so, he eliminates any serious question as to the validity of Claim 1 based upon the failure to state these parameters within the elements. At the same time, however, he establishes limits upon what can be claimed as infringement. See discussion in part 2 *infra.*

### C. *Indefiniteness: Connections*

The foregoing conclusion that Claim 1 is not invalid by reason of the failure to state the weight and size parameters of the invention within the elements of the claim does not end the matter with regard to validity under 35 U.S.C. § 112. Defendants have also raised the issue of whether the disclosure in Claim 1 of how the separable components of the claimed "personal mobility vehicle" are connected is sufficiently definite to provide notice to those skilled in the art as to the scope of what is claimed.

The elements of patent claims are to be read in light of the specification. *OrthoKinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1576 (Fed.Cir. 1986). In the "Summary of the Invention", the patent specification states that "the vehicle is conveniently separated into components." Patent, p. 6. In Claim 1(b)(6) this feature is disclosed and given specificity only through the use of the word "removably." Referring to the specification provides little insight, because the phrase "conveniently separated" in the specification sheds no light on the meaning of the word "removably" as used in the claim. According to the evidence, the word "removably" was not included in the patent as initially filed, and was added specifically for the purpose of disclosing this feature of the invention. The question for decision is whether this word alone is sufficient to give notice to one skilled in the art of the scope of what is claimed.

Defendants urge specifically that as a word for describing the connection between the drive unit and the floor pan, the word "removably" is wholly inapt. For that reason, they argue, it provides no notice at all of the scope of what is claimed.

The preferred embodiment of the invention, depicted in the specification, shows that the drive unit and the main frame unit are connected by means of a separate pin. Patent, p. 8. The Court finds it hard to imagine the intentional use of the word "removable" to describe such a connection.

By ordinary meaning and usage, the word "removably" suggests two components connected to each other in such way that the "removable" component can be separated from a stationary component, leaving both components fully intact when separated. It does not readily suggest a connection in which the "removable" component can be separated from the stationary component only after a third component has first been severed from both.

In this regard, it is instructive to note that the components that the claims describe as "removably" connected, other than the drive unit and the main frame unit, *are* shown in the preferred embodiment to be connected in such a way that one component may be said to be "removable" from the other in the ordinary sense of that word. In light of the differing safety and other requirements which must be met to produce a connection between the drive unit and the main frame unit, it might well represent a significant technical accomplishment to make this connection "removable" in the same sense as the other connections. The Court notes that none of the vehicles introduced into evidence—including Plaintiff's—had any such connection.[1]

The word "removable," of course, is sometimes used very broadly to suggest almost *any* kind of connection in which two components can be separated from each other, by any means, leaving both fully intact. Arguably, by showing the pin connection between the drive unit and the floor pan in the preferred embodiment, Kramer demonstrated that he was using the word in the broad sense and did not intend to limit it to the meaning ascribed by the Court. The difficulty this view poses is this: If the concept of "removable" includes a connection by which separation is possible only after the prior removal of a third component, what, if anything, is the limit of what is meant by "removable"? How may one skilled in the art ascertain such a limit?

It is hard to see why a component which is separable from another component only after the prior removal of a bayonet pin, as disclosed in the preferred embodiment, is more "removable" than a component which is only separable after the prior removal of a screw, or a nut and bolt. Yet it is upon this distinction that plaintiff chose to rely at trial.

In his testimony, Kramer argued that the word "removably" means a connection

---

1. Although the court is aware of the many cases holding that individual patent claims are not to be construed by reference to other claims found in the patent, it does not seem to offend the principle of those cases to note that while the inventor made no effort to make a more specific claim with respect to any of the other component connections he made no less than six separate more specific claims with respect to this connection.

which can be broken "without the use of tools." See, e.g., Trial transcript, vol. 2, p. 138. This construction, if tenable, would be common to all of the connections disclosed in the preferred embodiment. As defendants correctly observe, however, there is nothing in the dictionary definition of the word, or in common usage, or anywhere in the patent, which supports such a construction. Indeed, Kramer's own testimony on cross examination demonstrated the inherent weakness of this construction.

Obviously Kramer could not admit that the pin itself might be considered a "tool," even though it is used in connecting or separating the connected components, and is not part of either of them. This question was not even asked. Kramer was asked, however, whether the patent would be infringed if, rather than by removal of a bayonet pin, the connection could be broken by turning a T-shaped key, made as part of the vehicle. He answered in the affirmative. He was then asked whether, if the key were not actually part of the vehicle, but were instead something which could be carried around on the person, or stored for use in a pouch somewhere on the vehicle, he would consider the key to be a noninfringing "tool" or whether the vehicle would still infringe. Again he answered that the vehicle would infringe. Trial transcript, vol. 3, p. 158–160.

The patent has a total of seven separate claims relating specifically to this connection. The court has no doubt that each of the foregoing examples, if plaintiff had presented them as "equivalents" to any or all of the seven patent claims directed specifically to this connection, would present a fact question quite likely to be resolved in plaintiff's favor.

The court can find no rational basis, however, for concluding that a connection is "removable" if it can be severed by turning a separate T-shaped key in a slot, but not "removable" if it can be severed by turning an ordinary screw driver in an ordinary screw slot. The fact that the preferred embodiment of the patent discloses the pin, which is claimed specifically in other claims of the patent, therefore, does not cure the fatal weakness of the much broader, but inaccurate, claim of Claim 1 that the drive unit is "removably connected" to the main frame unit.

This claim does not "particularly point out and distinctly claim" Kramer's invention, and Kramer's testimony makes plain the confusion facing other inventors who would seek to avoid infringement—even those skilled in the art. That the misleading phrase "removably connected" occurs in only one element does not save the claim from invalidity, especially given the unique nature of the drive unit/main frame unit connection. See *Mathis v. Hydro Air Industries, Inc.,* 1 U.S.P.Q.2d 1513 (C.D.Cal. 1986) (invalidating a claim in which only one element contained the indefinite term "discardable"). Claim 1, therefore, is invalid under 35 U.S.C. § 112.

## II. Infringement

### A. *Size and Weight Limits*

■ In considering a motion for a directed verdict, the Court does not weigh the evidence, but draws all factual inferences in favor of the nonmoving party. *Lytle v. Household Manufacturing, Inc.,* 494 U.S. 545, 110 S.Ct. 1331, 1338, 108 L.Ed.2d 504 (1990). In arguing against the directed verdict on the issue of infringement, plaintiff urges primarily the depositions of defendants' experts which were introduced into evidence by stipulation. Plaintiff characterizes this deposition testimony as "admissions" by the experts that the defendants' products infringe Claim 1 of the patent. The Court finds this testimony to fall far short of admissions of infringement.

■ Although these depositions were taken by counsel for plaintiff, the experts were not asked the ultimate question whether, in their opinions, defendants' products infringed Claim 1 of the patent. Instead, counsel contented himself with a more limited line of questions designed to procure admissions by the experts that the defendants' products appeared to contain all of the elements of the combination claimed by Claim 1. No questions appear

to have been asked of these experts as to the meaning of the phrase "personal mobility vehicle" as used in the preamble of Claim 1 or whether an understanding of those words was necessary to breathe "life and meaning" into the claim. Absent questioning, there is no reason to believe that the experts would have volunteered their opinions as to these matters, particularly where the evidence gives no reason to believe that either expert was aware that the allegedly infringing vehicles included separable components weighing substantially more than the 30 pound limits described in the patent specification.

In holding that Claim 1's failure to express or quantify the limitations of weight and size which are inherent in the invention did not render the claim invalid, the Court has already found that those limitations are found in the definition, given in the specification, of the phrase "personal mobility vehicle." The Court has also held that this definition is incorporated into Claim 1 through the use of the phrase "personal mobility vehicle" in Claim 1, and that the weight limitations found in this definition operate as limitations upon the claim.

The undisputed evidence having shown that Defendants' products weighed approximately 160 to 180 pounds, the conclusion follows as a matter of law, that they do not infringe the patent.

### B. *Battery Pack*

■ Defendants also urge as a basis of non-infringement the fact that their vehicles each rely on multiple batteries. In contrast, in subsection (d) of Claim 1 Kramer described the claimed component included in his novel combination as "a battery unit including a battery member...." Patent, p. 9.

Looking to the previously quoted portion of the "Summary of the Invention" in the patent specification, one finds that in the definition of "personal mobility vehicle"

given there, the battery component is described in summary form as "a battery pack". Patent, p. 6. Looking further to the "Background of the Invention," the specification expressly differentiates the invention from the prior art by reference to the weight added by the use of two batteries rather than one ("The use of duplicate motors and batteries results in a vehicle which is substantially heavier than the majority of such vehicles.") Patent, p. 6.[2]

At trial, the evidence indicated that plaintiff originally marketed a personal mobility vehicle, as defined by Claim 1, which included only one battery and, although the proof was not clear as to this, presumably contained components which weighed less than thirty pounds each. Patent, p. 6. This model was commercially unsuccessful. Trial transcript, vol. 3, p. 49–51. The evidence further indicated that the first significant commercial success was achieved by personal mobility vehicles, including plaintiff's, only *after* the design was changed to add a second battery and use the increased voltage. *Id.*, p. 53. The evidence also established that the second battery was added not for convenience of design, but rather because the earlier model had insufficient power to provide optimum flexibility of use. Trial transcript, vol. 2, p. 153. While it might have been possible for Plaintiff to have located a single battery which would have produced adequate power, within the weight and other limitations of the invention, this fact was not shown.

Based upon the plain meaning of the words, the patent specification, and the testimony of Kramer, the Court finds that subsection (d) of the patent is not infringed.

### C. *Equivalents*

■ Plaintiff suggests somewhat indirectly in its brief that if it had been advised of the Court's concerns relating to

---

**2.** Kramer repeatedly testified that, although the patent claim and specification both make apparent reference to a single battery, these terms are not limitations. Interestingly, the claim refers in identical language to a single seat ("a seat unit including a seat member"), and the specification clearly describes a one-seat vehicle. Yet Kramer emphatically asserted that the patent *is* limited to vehicles with single seats. It is difficult to see the basis of Kramer's differing constructions, unless it is that defendants' vehicles have only one seat but more than one battery.

infringement in a more timely manner, it would have been able to present evidence to demonstrate that the infringing products were legally equivalent to those covered literally by the claims. Proof of equivalence, if necessary to the plaintiff's case, is part of the burden which it must meet in its case-in-chief. *Nestier Corp. v. Menasha Corp.–Lewisystems Div.*, 739 F.2d 1576 (Fed.Cir.1984). Since Plaintiff did not offer that evidence before Defendants made timely motion for directed verdict, the Court cannot consider it as a basis for denying the motion.