82 F.3d 435
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
In re BURKE, INC., Personal Mobility Vehicle Litigation.
BURKE, INC., Plaintiff-Appellant,
v.
EVEREST & JENNINGS, INC., Defendant-Appellee,
and
Invacare Corporation, Defendant-Appellee.
 No. 95-1145.
 United States Court of Appeals, Federal Circuit.
 March 27, 1996.
 
 Before ARCHER, Chief Judge, MICHEL, and RADER, Circuit Judges.
 DECISION
 ARCHER, Chief Judge.
 
 
 1
 Burke Inc. appeals from the November 17, 1994 summary judgment of the United States District Court for the Central District of California holding that the defendants Everett & Jennings, Inc. (E & J) and Invacare Corporation did not infringe United States Patent No. 4,570,739 ('739 patent). We reverse and remand.
 
 DISCUSSION
 I.
 
 2
 The '739 patent is directed to a personal mobility vehicle commonly referred to as a scooter. The scooter is a small, electrically powered three-wheel device that gives mobility to a handicapped or elderly person. E & J and Invacare both manufacture and sell personal mobility vehicles. Burke, the assignee of the '739 patent, sued E & J, Invacare and several other manufacturers for infringement of its '739 patent. These actions were consolidated in the Central District of California.
 
 
 3
 Burke's action against E & J and Invacare went to trial on September 10, 1991. Claim 1 of the '739 patent was the only claim at issue. After the presentation of Burke's case-in-chief, the district court granted the defendants' motion for directed verdict on the grounds of invalidity (for indefiniteness under 35 U.S.C. 112, p 2) and noninfringement. On March 31, 1993, we vacated the district court's judgment and remanded the case. Burke, Inc. v. Everest & Jennings, Inc., 991 F.2d 812 (Fed.Cir.1993) (table) (nonprecedential opinion reported at 29 USPQ2d 1393).
 
 
 4
 Concurrently with the proceedings in the district court, one of the other defendants (not E & J or Invacare) requested reexamination of the '739 patent by the Patent and Trademark Office (PTO). The request was granted and the PTO issued its decision on November 23, 1993. Although the patent examiner in the reexamination proceedings rejected claim 1 as being anticipated under 35 U.S.C. 102(b) by a prior art reference, U.S. Patent No. 3,117,648 issued to Landreth, the examiner's rejection was reversed by the Board of Patent Appeals and Interferences (Board). On April 19, 1994, the PTO issued Burke a reexamination certificate for the '739 patent, confirming the patentability of claims 1 through 14 and adding new claims 18 through 29.
 
 
 5
 In the district court proceedings following this court's remand, E & J and Invacare filed a motion for summary judgment of noninfringement of claim 1. These defendants argued that the PTO had provided an "authoritative interpretation" of claim 1 which "significantly narrowed the scope of claim 1" and that under this narrowed interpretation the defendants' accused personal mobility vehicles did not infringe as a matter of law.
 
 
 6
 At a hearing on July 18, 1994, the district court judge stated that he would probably grant the motion but that he would not do so from the bench. During the course of the hearing, the judge again expressed his doubt as to the validity of the '739 patent claim at issue. Thereafter, on November 8, 1994, the district court issued judgment for the defendants, stating that a separate written opinion would follow, and on December 5, 1994, issued an amended judgment correcting typographical errors. Not until March 21, 1995, did the district court issue its opinion, and by this time Burke had, as required by law, filed its notice of appeal with the district court and its initial appellate brief with this court.
 
 II.
 
 7
 A. We review the district court's grant of summary judgment under a de novo standard of review, with all justifiable factual inferences being drawn in favor of the party opposing summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986). Our threshold issue is whether there is anything for us to review other than the district court's amended judgment. The district court's written opinion finding facts and stating conclusions of law required by Rule 52, Fed.R.Civ.P., was not issued until well after this court had jurisdiction over the case and after Burke had filed its appellate brief.
 
 
 8
 Neither party has indicated any objection to our considering the district court's belated written opinion of March 21, 1995. That opinion apparently reflects what Burke anticipated the district court's reasoning would be. Moreover, Burke recognizes the difficulty in trying to review a bare judgment, with the likely result that we would have to remand the case. Thus, under the circumstances and in order to provide meaningful review in this appeal, we will consider the district court's opinion.
 
 
 9
 B. Claim construction is a question of law which this court reviews de novo. Markman v. Westview Instruments, Inc., 52 F.3d 967, 34 USPQ2d 1321 (Fed.Cir.) (in banc), cert. granted, 116 S.Ct. 40 (1995). Because the district court's claim construction was erroneous, we find it necessary to reverse the judgment of the district court.
 
 Claim 1 provides:
 1. A personal mobility vehicle comprising:
 
 10
 (a) a main frame unit including:
 
 
 11
 (1) a floor pan having a back end;
 
 
 12
 (2) a front wheel spindle pivotally connected to said pan[;]
 
 
 13
 (3) a front ground engaging wheel rotatably mounted on said spindle; and
 
 
 14
 (4) a steering tiller connected to said spindle;
 
 
 15
 (b) a rear drive unit including:
 
 
 16
 (1) drive unit frame;
 
 
 17
 (2) a rear axle means rotatably mounted on said drive unit frame;
 
 
 18
 (3) a pair of spaced apart ground engaging rear wheels mounted on said rear axle means in spaced apart relation;
 
 
 19
 (4) a motor mounted on said frame;
 
 
 20
 (5) transmission means drivingly connecting said motor to said rear axle means; and
 
 
 21
 (6) frame connection means removably connecting said drive unit frame to said floor pan of said main frame unit with said floor pan back end adjacent said rear wheels;
 
 
 22
 (c) a seat unit including a seat member, said seat unit being connected to said floor pan of said main frame unit in proximity to said floor pan back end with said seat member in spaced relation to said pan;
 
 
 23
 (d) a battery unit including a battery member, said battery unit being removably positioned on said floor pan of said main frame unit in proximity to said back end thereof; and
 
 
 24
 (e) control means removably interconnecting said battery member with said motor to selectively operate said motor to propel said vehicle.
 
 
 25
 The specific limitations on which the district court relied are emphasized above. In its opinion, the district court held "[a]s a matter of law, given the PTO's extremely narrow interpretation of the ['739] patent in light of the Landreth patent, the Invacare and the E & J scooters do not infringe on the ['739] patent." In the district court's view, the Board interpreted claim 1 very narrowly in order to save the validity of the '739 patent.
 
 
 26
 In particular, the district court determined that the Board had to interpret the recited "floor pan" of claim 1 as only the flat portion of the horizontal underframe where the feet of a person may rest. Moreover, the district court held that this flat portion, the entirety of which must be accessible to the feet of a person, must extend to the rear of the scooter and be adjacent to the rear wheels. The district court believed this narrow construction was required by the Board's decision that the '739 patent was not anticipated by Landreth. In the Landreth electrically powered golf cart, the floor pan (where a person's feet rest) and the underframe are two separate pieces. Its underframe on which the batteries are mounted is adjacent to the rear wheels but its floor pan on which the feet rest is not. From this, the district court viewed claim 1 to be valid as requiring an unobstructed floor pan extending to the rear wheels on which the feet may rest. Because neither of the defendants' products had an unobstructed floor pan that extended to the rear wheels, the district court determined as a matter of law that they could not infringe.
 
 
 27
 The district court also concluded that the structure of the defendants' personal mobility vehicles by which the main frame is connected to the drive unit is substantially different from the "frame connecting means" recited in claim 1.
 
 
 28
 C. The Board's decision does not support such a narrow construction of claim 1. The Board did not find that the floor pan is only the unobstructed portion of the vehicle which is accessible to the rider's feet and there is no support for the district court's reading of such a limitation into claim 1. The Board found that claim 1 was not anticipated by Landreth because the structure disclosed by Landreth did not teach the location of a floor pan adjacent to the rear wheels as claimed or the location of the drive unit mounted to the floor pan. Thus, the Board did not narrow claim 1 of the '739 patent.
 
 
 29
 The district court's restrictive reading of claim 1 is not supported by the language of claim 1 or by the specification. It is clear when all of the limitations of claim 1 are considered that the floor pan of the '739 patent essentially constitutes the horizontal frame of the claimed scooter. Thus, the floor pan must connect with both the spindle, or steering mechanism, and the driving unit and it must also support the seat. Moreover, the language of claim 1 explicitly places the battery on the floor pan. Contrary to the district court, the floor pan is not just that part of the underlying horizontal frame where the rider puts their feet, but in fact acts as the entire horizontal frame.
 
 
 30
 The specification also supports this view. The specification describes the floor pan as including a floor pan frame composed of a center beam, a front lateral member, and a rear lateral member. It also discloses that the battery pack is positioned on one of the side portions of the floor pan during use. Claim 1 and the specification therefore make clear that the floor pan of the '739 patent is not limited to an unobstructed place where the rider's feet rest. Rather, it is essentially the entire horizontal frame, including the place where the battery is placed.
 
 
 31
 Because the district court based its finding of noninfringement on faulty claim construction, its grant of summary judgment must be reversed. See Key Mfg. Group, Inc. v. Microdot, Inc., 925 F.2d 1444, 1448, 17 USPQ2d 1806, 1809 (Fed.Cir.1991) ("Before analyzing a claim to determine whether infringement occurs, the court must properly interpret the claim. Improper claim construction can distort the entire infringement analysis.").
 
 
 32
 D. We are also convinced that the trial judge erred holding on summary judgment that the spring biased pin of the Invacare vehicle and the hitch pin arrangement of the E & J vehicle are not equivalent to the frame connection means disclosed in the '739 patent. In the specification, three collinear bayonet pins are shown as a connecting means.
 
 
 33
 Under 35 U.S.C. § 112, p 6, a means plus function limitation reads on an element of the accused device which is identical to, or the equivalent of, the structure, material, or acts described in the patent specification. Valmont Indus., Inc. v. Reinke Mfg. Co., 983 F.2d 1039, 1042-44, 25 USPQ2d 1451, 1454-56 (Fed.Cir.1993). The question of structural equivalence pursuant to 35 U.S.C. § 112, p 6, is a question of fact for the fact finder to resolve assuming a genuine issue of material fact. In re Hayes Microcomputer Prod., Inc. Patent Litig., 982 F.2d 1527, 1541, 25 USPQ2d 1241, 1251 (Fed.Cir.1992).
 
 
 34
 In the summary judgment proceedings, Burke proffered uncontradicted evidence in the form of a sworn declaration asserting the equivalence of the connection means of the accused devices. E & J and Invacare failed to put forth any evidence to the contrary. E & J and Invacare failed to carry their burden of showing that there is no genuine issue of material fact as to the equivalence of the connection means. The district court's summary finding of nonequivalency is inappropriate in light of the contrary evidence on this issue of fact.
 
 
 35
 Accordingly, we reverse the district court's grant of summary judgment of noninfringement and remand the case for further proceedings consistent with this opinion.[1]
 
 
 
 [1]
 We have considered and reject Burke's argument that the trial judge is biased. While the judge's claim construction was flawed, and while he spoke frankly about the continuing doubt as to the validity of the '739 patent even following this court's decision, that does not establish bias or "deep seated favoritism." Accordingly, Burke's request that this case be remanded to a new judge is denied. See Liteky v. United States, 114 S.Ct. 1147, 1157 (1994). Thus, whether the case is to be reassigned is not stipulated by this court, but is a matter to be determined under the local rules of the district court or by the chief judge and the trial judge