**BURKE, INC., Plaintiff–Appellant,**

v.

**BRUNO INDEPENDENT LIVING AIDS, INC., Defendant–Appellee.**

No. 97–1273.

United States Court of Appeals, Federal Circuit.

July 2, 1999.

James H. Wallace, Jr., Wiley, Rein & Fielding, of Washington, DC, argued for plaintiff-appellant. With him on the brief were Andrew S. Krulwich and Michael L. Sturm.

C. Thomas Sylke, Foley & Lardner, of Milwaukee, Wisconsin, argued for defendant-appellee. With him on the brief was Lawrence M. Sung, Foley & Lardner, of Washington, DC.

Before LOURIE, Circuit Judge, ARCHER,* Senior Circuit Judge, and RADER, Circuit Judge.

ARCHER, Senior Circuit Judge.

## DECISION

Burke, Inc. (Burke) appeals from the March 6, 1997 summary judgment of the

---

* Senior Circuit Judge Archer vacated the position of Chief Judge on December 24, 1997.

United States District Court for the Eastern District of Wisconsin [1] holding that the defendant, Bruno Independent Living Aids, Inc. (Bruno) did not infringe United States Patent No. 4,570,739 (739 patent). We vacate the judgment and remand for further proceedings.

## BACKGROUND

Burke is the assignee of the 739 patent which is directed to a personal mobility vehicle, commonly referred to as a scooter. The scooter is a small, electrically powered three-wheel device that gives mobility to an elderly or physically challenged person. The case now on appeal is one of a number of suits for infringement of the 739 patent filed by Burke in different district courts. This court first considered the 739 patent in connection with Burke's infringement suits against Everest Jennings, Inc. (E J) and Invacare Corporation, Inc. (Invacare). There, a California district court had granted the defendants motion for directed verdict on the grounds of invalidity (for indefiniteness under 35 U.S.C. 112, 2) and noninfringement. *In re Burke, Inc.*, 786 F.Supp. 1537, 22 USPQ2d 1368 (C.D.Cal. 1992). On March 31, 1993 we vacated the district courts judgment and remanded the case. *Burke, Inc. v. Everest Jennings, Inc.*, 991 F.2d 812 (Fed.Cir.1993) (table), 1993 WL 92579 (nonprecedential opinion reported at 29 USPQ2d 1393) (*Burke I* ).

Concurrently with the proceedings in the district court, the Patent and Trademark Office (PTO) granted a request for reexamination of the 739 patent. On April 19, 1994, the PTO issued Burke a reexamination certificate for the 739 patent, confirming the patentability of claims 1 through 14 and adding new claims 18 through 29.

In the California district court proceedings following the remand in *Burke I*, the court entered summary judgment in favor of EJ and Invacare. *See In re Burke, Inc.*, MDL Docket No. 809–JSL (C.D.Cal. March 31, 1995). The court determined that claim 1 had been narrowed in the reexamination proceeding. In particular, it held that the disputed term floor pan in claim 1 required accessibility to the feet of the rider. It also held that the frame connection means of claim 1 for connecting the front and rear modular units was not infringed by an identical or equivalent connection in the accused devices.

We reversed both of these holdings of the California district court in a non-precedential opinion. *See Burke, Inc. v. Everest Jennings, Inc.*, 82 F.3d 435 (Fed.Cir.1996) (table), 1996 WL 137527 (*Burke II* ). We concluded that claim 1 of the 739 patent was not narrowed in the reexamination proceedings. We construed the term floor pan to mean that the floor pan is not limited to an unobstructed place where the rider's feet rest. Rather, it is essentially the horizontal frame, including the place where the battery is placed. We also held that the district court erred when it determined on summary judgment that the frame connection means disclosed in the 739 patent was not infringed.

The case against Bruno, the subject of this appeal, was brought in the United States District Court for the District of Wisconsin on March 15, 1994, following this courts decision in *Burke I* and shortly after the reexamination proceeding confirmed the validity of all claims of the 739 patent. The Wisconsin district court issued a Decision and Order (later vacated) that expressly adopted the California district court's interpretation of the claims. The Wisconsin court held that claim 1 had been narrowed in reexamination and that accessibility to the feet was a required

1. *Burke, Inc. v. Bruno Independent Living Aids, Inc.*, Case No. 94–C–290 (E.D.Wis. March 6, 1997).

limitation to the term floor pan.[2]

Burke sought reconsideration and the Wisconsin district court granted the motion to the extent of vacating its Decision and Order pending the issuance of this courts decision in *Burke II.* After reviewing *Burke II*, the district court granted Brunos renewed motion for summary judgment. In holding that Bruno did not infringe claim 1, the court interpreted the term floor pan in claim 1 of the 739 patent to require (i) that it be composed of sheet metal, (ii) that the sheet metal be contiguous, meaning either one single piece of sheet metal or several pieces of sheet metal welded directly to each other and (iii) that the sheet metal be in a single plane. Burke has appealed the district court's summary judgment on the grounds that its claim interpretation was erroneous.

## DISCUSSION

### I. Reliance on a nonprecedential opinion

■ Burke cites and relies upon this courts nonprecedential opinion in *Burke II,* asserting that the district court erred when it failed to adopt this courts claim construction in that case. Bruno contends that Burke's use of a nonprecedential opinion violates this courts proscription under Fed. Cir. R. 47.6(b) against employment or citation of a nonprecedential opinion as precedent. Rule 47.6(b) states:

> Opinions and orders which are designated as not citable as precedent ... shall not be employed or cited as precedent. This rule does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the court rendered in a nonprecedential opinion or order.

Burke argues that reliance on our nonprecedential claim construction is appropriate because it is permitted under Rule 47.6(b) for issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like. Burke contends that the claim construction in *Burke II* should fall in the catchall provision, or the like, because we construed the same claim limitations at issue here and because the court below repeatedly noted our opinion.

Rule 47.6(b) does not unconditionally prohibit citation of nonprecedential opinions but instead permits citation of such opinions for limited purposes. In this case, the interest of consistency in the construction of patent claims would be ill served by interpreting Rule 47.6(b) to preclude consideration of a prior claim construction rendered as a matter of law by this court. *See Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 389–91, 116 S.Ct. 1384, 1396, 134 L.Ed.2d 577, 38 USPQ2d 1461, 1470–71, *affg* 52 F.3d 967, 1011, 34 USPQ2d 1321, 1356 (Fed.Cir. 1995) (*en banc* ) (noting importance of uniformity of treatment of a given patent). Because the present case concerns the identical issue of law decided by the court in *Burke II,* i.e., the meaning of the term floor pan in claim 1 of the 739 patent, we believe the exception to the non-citation rule should be applied.

Bruno contends that this court considered a similar situation in the case of *CVI/Beta Ventures Inc. v. Tura LP,* 112 F.3d 1146, 42 USPQ2d 1577 (Fed.Cir.1997) in which this court reached a different claim construction with respect to the same patent that had been considered in a prior nonprecedential decision of the court. In the first case the claims were considered in the context of preliminary injunction proceedings, whereas in·the second

---

**2.** The Wisconsin court also ruled that the frame connection in the Bruno vehicle was not the same or equivalent to the frame connection means disclosed in the '739 patent.

*See* 35 U.S.C. § 112 ¶ 6 (1994). This issue, however, was not reconsidered and decided in the summary judgment now on appeal.

case the claim construction was based upon the final and complete record. *CVI/ Beta Ventures,* 112 F.3d at 1160 n. 7. Thus, the differing claim constructions resulted from the different procedural status of the two cases and not on the mere fact that the earlier case was nonprecedential. *Id.* That case, contrary to Brunos assertions, does not provide a blanket proscription against asserting a claim construction rendered in an earlier nonprecedential opinion in subsequent litigation against different defendants on the same patent.

Because the same claim of the same patent is at issue in this case, it was not improper under Rule 47.6 to cite *Burke II* and discuss and rely on this court's claim construction in that case.

II. District Courts grant of summary judgment

■ A. This court reviews the grant of summary judgment *de novo* applying the same standard as the district court. *See Conroy v. Reebok Intl., Ltd.,* 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed. Cir.1994). In determining the propriety of a summary judgment of noninfringement, we review *de novo* the district courts claim interpretation. *See Markman v. Westview Instruments, Inc.,* 52 F.3d at 979, 34 USPQ2d at 1329 (Fed.Cir.1995) (en banc), *affd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Johnston v. IVAC Corp.,* 885 F.2d 1574, 1576–77, 12 USPQ2d 1382, 1383 (Fed.Cir. 1989). Even when material facts are in dispute, summary adjudication may be appropriate if, with all factual inferences drawn in favor of the nonmovant, the movant would nonetheless be entitled to judgment as a matter of law. *See Stark v. Advanced Magnetics,* 29 F.3d 1570, 1572–73, 31 USPQ2d 1290, 1292 (Fed.Cir.1994).

Summary judgment should ordinarily be vacated or reversed, however, if it is based on a claim construction that this court determines to be erroneous. *See International Visual Corp. v. Crown Metal Mfg. Co.,* 991 F.2d 768, 772, 26 USPQ2d 1588, 1591 (Fed.Cir.1993).

B. Claim 1 of the '739 patent, which is the only claim at issue, reads as follows:

1. A personal mobility vehicle comprising:

(a) a main frame unit including:

(1) a floor pan having a back end;

(2) a front wheel spindle pivotally connected to said pan[;]

(3) a front ground engaging wheel rotatably mounted on said spindle; and

(4) a steering tiller connected to said spindle;

(b) a rear drive unit including:

(1) a drive unit frame;

(2) a rear axle means rotatably mounted on said drive unit frame;

(3) a pair of spaced apart ground engaging rear wheels mounted on said rear axle means in spaced apart relation;

(4) a motor mounted on said frame;

(5) transmission means drivingly connecting said motor to said rear axle means; and

(6) frame connection means removably connecting said drive unit frame to said floor pan of said main frame unit with said floor pan back end adjacent said rear wheels;

(c) a seat unit including a seat member, said seat unit being connected to said floor pan of said main frame unit in proximity to said floor pan back end with said seat member in spaced relation to said pan;

(d) a battery unit including a battery member; said battery unit being remov-

ably positioned on said floor pan of said main frame unit in proximity to said back end thereof; and

(e) control means removably interconnecting said battery member with said motor to selectively operate said motor to propel said vehicle.

■ In its initial summary judgment decision in this case, the district court held that Bruno's vehicle did not infringe because "Bruno's floor pan and battery pan structure function as separate components and there is a valid distinction between Bruno's battery pan structure and the ['739 patent's] floor pan." The distinction the district court saw related primarily to the location of the rider's feet. Relying on the California district court's claim interpretation on remand in *In re Burke, Inc.,* MDL Docket No. 809–JSL, 11–12, the Wisconsin court noted that " 'the part of [Bruno's] vehicle where one places one's feet' only reaches to the portion of the vehicle which Bruno refers to as 'the battery pan structure.' "

In its decision on the renewed summary judgment motion, the Wisconsin district court recognized, after this court's reversal in *Burke II* of the California district court's judgment and claim interpretation, that "unobstructed access for feet is no longer a valid basis upon which to define the contours of the 'floor pan.' " It quoted our language in *Burke II* that the floor pan of the '739 patent "is not limited to an unobstructed place where the rider's feet rest." The court then interpreted "floor pan" as that term is used in claim 1 of the '739 patent as composed of sheet metal which is contiguous and in a single plane.

The court compared this claim interpretation with Bruno's vehicle and found that none of these requirements of the floor pan was satisfied. It determined that the horizontal frame of Bruno's vehicle comprises three pieces of sheet metal. Two of the pieces adjacent to the rear wheels are

pans for the batteries. Because these are welded to the underside of the frame and not to the topside like the larger pan, the court held that they were not contiguous with the larger pan and were not in the same plane. Accordingly, the court found no infringement under its claim interpretation.

Burke challenges the district court's claim interpretation and urges that the court erred by reading unstated limitations into the claim to find noninfringement. It cites to this court's precedents and states that we have consistently and repeatedly cautioned against reading limitations into the claims of a patent. Moreover, according to Burke, nothing in the specification or prosecution history supports the district court's added requirements for the structure of the floor pan. Finally, Burke argues that the district court's added requirements and resulting interpretation of claim 1 of the '739 patent are inconsistent with our decision in *Burke II*.

In its appeal brief, Bruno has not directly responded to Burke's arguments and has not tried to support the added requirements of the floor pan imposed by the district court's claim interpretation. Instead, it urges that the district court's earlier interpretation of the floor pan limitation in its vacated Decision and Order should be sustained. That interpretation required that the entire floor pan be accessible to the rider's feet. Bruno argues that the two battery pans in its vehicle were not accessible to the rider's feet. In part, this argument is premised on Bruno's view that this court's claim construction in *Burke II* cannot be used for any purpose because it was in a nonprecedential opinion. As discussed above, we have concluded that the district court and Burke properly relied on our decision in *Burke II* and we are not persuaded that our claim construction in that case was incorrect.

The district court interpreted the term "floor pan" in the '739 patent to mean a

contiguous assemblage of sheet metal when it stated:

> The Court believes that a floor pan necessarily involves sheet metal and hence construes Claim 1's "floor pan" (qua entire horizontal frame, per [Burke II]) to mean a contiguous assemblage of sheet metal. . . .

*Burke, Inc. v. Bruno Independent Living Aids, Inc.*, Case No. 94–C–290, 9 (E.D.Wis. March 5, 1997). The court further explained this interpretation by saying that "[b]y 'contiguous' the Court means either a single piece of sheet metal or several pieces of sheet metal welded directly to each other." *Id.* at 6 n. 3. Using this interpretation, the court determined that Bruno's vehicle could not infringe because frame members were welded between portions of sheet metal. Moreover, the court interpreted "floor pan" as requiring that the sheet metal be in one plane. Bruno did not satisfy this requirement, according to the court, because the battery pans in the Bruno vehicle were lower than the larger sheet metal pan where the rider's feet are placed. Thus, the court based its finding of noninfringement of the floor pan limitation on the failure of Bruno's vehicle to have added characteristics not specifically set out in the claim – viz., a contiguous sheet metal floor pan entirely in the same plane.

The Supreme Court in *Markman*, 517 U.S. at 371, 116 S.Ct. at 1387, emphasized that the public is entitled to be apprised of what is and is not protected by a particular patent and that that is the purpose of claims. *See also Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257, 9 USPQ2d 1962, 1966–67 (Fed. Cir.1989) ("A claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention."). This court has held that the language of the claims, the specification and the prosecution history are principally involved in construing patent claims because these constitute the public record. *See Markman*, 52 F.3d at 976, 34 USPQ2d at 1326; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582–83, 39 USPQ2d 1573, 1576–77 (Fed.Cir. 1996).

Consistent with the principle that the patented invention is defined by the claims, we have often held that limitations cannot be read into the claims from the specification or the prosecution history. *See, e.g., Intervet Am., Inc. v. Kee–Vet Labs., Inc.*, 887 F.2d 1050, 1053, 12 USPQ2d 1474, 1476 (Fed.Cir.1989) ("[T]his court has consistently adhered to the proposition that courts cannot alter what the patentee has chosen to claim as his invention, that limitations appearing in the specification will not be read into claims, and that interpreting what is meant by a word in a claim 'is not to be confused with adding an extraneous limitation appearing in the specification, which is improper.'") (quoting *E.I. duPont de Nemours & Co. v. Phillips Petroleum Co.* 849 F.2d 1430, 1433, 7 USPQ2d 1129, 1131 (Fed.Cir. 1988)). We are satisfied that the district court in this case has improperly read additional limitations into claim 1 of the '739 patent.

Looking first at the language of claim 1 of the '739 patent, there is no mention of "sheet metal" or "one piece of sheet metal or several pieces of sheet metal welded directly to each other" in the claim and there is no language that would exclude parts of the floor pan from being in a "different plane." All that the claim requires is "a floor pan having a back end" which can be connected to the rear drive unit in a manner that will place the floor pan back end adjacent to the rear wheels. The claims further state that the steering spindle and the seat unit are connected to the floor pan and the battery unit is positioned on the floor pan near the back end. The literal language of the claim, there-

fore, does not warrant the added requirements imposed by the district court.

■ Beyond the language of the claim, we must also look to the specification and prosecution history to see whether the patentee defined any of the pertinent terms of the claim or whether such terms would have the meaning to one skilled in the art ascribed to them by the district court. We do not glean from the specification the district court's definitions. "Floor pan" is not specifically given any special meaning by the inventor. While the pan disclosed in the preferred embodiment is sheet aluminum, an attribute of the preferred embodiment cannot be read into the claim as a limitation. *See Texas Instruments, Inc. v. United States Int'l Trade Comm'n,* 805 F.2d 1558, 1563, 231 USPQ 833, 835 (1986) ("This court has cautioned against limiting the claimed invention to the preferred embodiments as specific examples in the specification."); *Laitram Corp. v. Cambridge Wire Cloth Co.,* 863 F.2d 855, 865, 9 USPQ2d 1289, 1299 (Fed.Cir.1988) ("References to a preferred embodiment, such as those often present in a specification, are not claim limitations.").

There is also nothing in the specification which sets out design details such as whether one piece of sheet metal or several pieces welded together form the pan or whether frame members must be present or absent from certain locations in relationship to the surface of the pan. The written description, however, states that "the preferred embodiment has a floor pan frame composed of a center beam, a front lateral member and a rear lateral member" and that these frame parts are a steel beam and angle stock welded together. Thus, frame members were contemplated by the patentee to be part of the "floor pan." Finally, the single plane requirement found by the district court is inconsistent with the specification and would operate to exclude the preferred embodi-

ment. The written description shows that the preferred embodiment does not use an entirely flat piece of aluminum; rather, it has a "raised center ridge" that goes over the central frame member and "outer edges .... upturned to strengthen the side portions." The district court's claim interpretation requiring a single plane would exclude the preferred embodiment described in the specification and, thus, cannot be sustained. *See Howes v. Medical Components, Inc.,* 814 F.2d 638, 643–44, 2 USPQ2d 1271, 1274 (Fed.Cir.1987).

Finally, the prosecution history contains no limiting definitional arguments or concessions that would require the term "floor pan" to be interpreted with the added requirements imposed by the district court.

As noted by Burke in its appeal, this court previously construed the term "floor pan" in *Burke II.* There we said that "when all of the limitations of claim 1 are considered ... the floor pan of the '739 patent essentially constitutes the horizontal frame of the claimed scooter." *Burke II,* 82 F.3d at 435 (table), 1996 WL 137527, *3. We reached this claim construction by examining the specification which describes the term "floor pan" as used in the patent as including not only the surface on which the feet and battery are placed but also framing, such as the center beam, front lateral member and rear lateral member shown for the preferred embodiment. We concluded that claim 1 and the specification make clear that the floor pan of the '739 patent is not limited to an unobstructed place where the rider's feet rest. Rather, it is essentially the entire horizontal frame, including the place where the battery is placed. *See id.*

For the reasons stated, we must conclude that the added requirements of the floor pan that the district court relied on for its finding of non-infringement cannot be upheld. The summary judgment based

on the court's interpretation of the claim term "floor pan" is therefore vacated.

■ C. The district court also found non-infringement on alternative grounds. It held that even if the term "floor pan" covered Bruno's "three pans welded together," Bruno did not attach its steering "spindle" or seat to the floor pan. The court found that the "spindle connects to a transom between two longitudinal frame members, and the seat unit connects to a center longitudinal member." Thus, they are attached to the frame members to which the sheet metal parts are welded. The court concluded the limitations of claim paragraphs 1(a)(2) and 1(c) were not infringed because the "floor pan" of claim 1 "must connect with both the spindle, or steering mechanism, and the driving unit, and it must also support the seat." *Burke, Inc.*, Case No. 94-C-290, 6 (quoting *Burke II*, 82 F.3d 435 (table), 1996 WL 137527, *3). The district court viewed the "floor pan" as only covering a sheet metal platform.

When the district court's quotation from our *Burke II* opinion is read in context, it is evident that we did not narrowly construe "floor pan" as covering only a platform. In *Burke II*, in the sentence immediately preceding the quoted sentence we said:

> It is clear when all of the limitations of claim 1 are considered that the floor pan of the '739 patent essentially constitutes the horizontal frame of the claimed scooter and contrary to the district court, the floor pan in fact acts as the entire horizontal frame.

82 F.3d 435 (table), 1996 WL 137527, *3. Later, relying on the written description of the specification for assistance, we noted:

> The specification describes the floor pan as including a floor pan frame composed of a center beam, a front lateral member and rear lateral member.

*Id.*

Finally, the *Burke II* opinion reiterates that the floor pan is not limited to an unobstructed place where the rider's feet rest, but rather, it is essentially the entire horizontal frame.

We are convinced that the district court has improperly narrowed the meaning of the term "floor pan" in claim 1 of the '739 patent to include only a sheet metal platform in determining, in the alternative, that Bruno does not infringe the limitations of claim paragraphs 1(a)(2) and 1(c). Because the district court did not properly interpret the limitations of the claim in making its alternative determination of noninfringement, its summary judgment on alternative grounds must also be vacated.

Accordingly, the summary judgment of the district court is vacated and the case is remanded for further proceedings consistent with this opinion.

*VACATED AND REMANDED.*