**ENVIRCO CORPORATION,**
**Plaintiff–Appellant,**

v.

**CLESTRA CLEANROOM, INC.,**
**Defendant–Appellee.**

**No. 99–1111.**

United States Court of Appeals,
Federal Circuit.

April 18, 2000.

---

Robert C. Faber, Ostrolenk, Faber, Gerb & Soffen, LLP, of New York, New York, argued for plaintiff-appellant. With him on the brief was Douglas A. Miro.

Francis D. Cerrito, Pennie & Edmonds, LLP, of New York, New York, argued for defendant-appellee. With him on the brief was Brian M. Poissant.

Before MAYER, Chief Judge, LOURIE, and RADER, Circuit Judges.

RADER, Circuit Judge.

Envirco Corporation (Envirco) sued Clestra Cleanroom, Inc. (Clestra) in the United States District Court for the Northern District of New York for infringement of its U.S. Patent No. 4,560,395 ('395 patent), which covers a centrifugal fan and filter assembly for clean room environments. The district court granted Clestra's motion for summary judgment of non infringement. Because the district court erred in construing the claims-in-suit and finding those claims not infringed, this court vacates and remands.

## I.

Envirco owns the '395 patent. The '395 patent contains three independent apparatus claims and twenty-one dependent claims. The claims cover a compact fan and filter assembly for use in a clean room. Clean rooms are closed areas used for work that must be conducted in a dust free environment, such as production of computer chips. The claimed invention has a housing, a blower fan, a first baffle, a second baffle, and a high efficiency particulate arresting, or HEPA, filter. Figure 1 illustrates an embodiment of the claimed apparatus. The arrows in the drawing indicate the direction of airflow:

1362

**Figure 1**

The claimed elements of the fan apparatus are arranged so that the unit—though small and compact—still efficiently creates a laminar airflow. The centrifugal fan element (37) draws air into the unit through an intake (30) on the top of the housing. Two sets of baffles then direct the air flow within the apparatus. The first baffle (58), located under the fan, directs the airflow upwardly and outwardly, toward the second baffle (67). The second baffle then directs air downwards and inwards, toward the HEPA filter (48). After passing through the HEPA filter, air flows out the underside of the enclosure.

In pre-trial proceedings the parties agreed that the second baffle is the only disputed claim element. Claim 1 of the '395 patent illustrates the asserted claims-in-suit:

1. A compact air purification apparatus for providing clean airflow to a clean air enclosure comprising a primary housing having first and second end portions and substantially closed sidewall portions, inlet and discharge openings disposed through said first and second end portions, respectively, a blower means mounted through said inlet opening so as to extend inwardly of said primary housing, said blower means having a motor drivingly connected to a centrifugal fan means, said centrifugal fan being disposed within said primary housing so as to discharge air radially outwardly with respect to said inlet opening, said centrifugal fan including a plurality of radially extending blade means, a filter means mounted within said primary housing adjacent said discharge opening so that all airflow outwardly of said primary housing through said discharge opening passes through said filter means, a first baffle means disposed adjacent said centrifugal fan means and between said centrifugal fan means and said filter means, said first baffle means having outwardly extending wall portions which extend outwardly of said centrifugal fan means toward said sidewalls of said primary housing so as to create an airflow space radially of said centrifugal fan means between said first

baffle means and said sidewalls of said primary housing, *second baffle means disposed radially outwardly of said centrifugal fan means and said first baffle means, said second baffle means having inner surfaces for directing the airflow from said centrifugal fan means inwardly of said primary housing and between said first baffle means and said filter means whereby air being introduced into said housing by said centrifugal fan means will be directed radially outwardly of said centrifugal fan means and guided by said first baffle means towards said second baffle means and thereafter by said second baffle means between said first baffle means and said air filter means.*

'395 patent, col. 9, l. 64—col. 10, l. 32 (emphasis added).

Clestra makes the accused infringing product, the Fantom fan. The parties agree that the Fantom has a blower fan, a first baffle, a housing, and a HEPA filter covered by the claims in the '395 patent. At issue is whether the sound dampening material of the Fantom constitutes, or is equivalent to, the second baffle means of the asserted patent claims. The district court described the Fantom's sound dampening material as "L-shaped." The Fantom actually has sound dampening material covering the interior ceiling and walls of the enclosure. Thus, only when viewed as a cross-section does the Fantom's sound dampening material appear as L-shaped.

The district court construed the term "second baffle means" of the asserted claims of the '395 patent as a means-plus-function claim element under 35 U.S.C. § 112, ¶ 6 (1994). Because the district court held that the second baffle means is a means-plus-function claim element, it looked to the specification for the corresponding structure. The district court focused its attention on one of the disclosed preferred embodiments, which included a second baffle having "continuous arcuate surfaces." '395 patent, col. 5, l. 40. Therefore, the district court limited the second baffle means to only arcuate, or curved surfaces. However, the district court overlooked other disclosed embodiments such as those in Figures 2 and 3, which both contain angular baffles.

**Figure 2**

**Figure 3**

Under this claim construction, the district court performed its infringement analysis, comparing the accused Fantom product to the claims of the '395 patent. Granting Clestra's summary judgment motion, the district court held that the Fantom does not infringe because the L-shaped material in the Fantom is not arcuate. The district court also held the claims of the '395 patent not infringed under the doctrine of equivalents. Envirco appeals.

## II.

This court reviews the district court's grant of Clestra's summary judgment motion *de novo*. *See Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994). Clestra may prevail on summary judgment only by showing an absence of genuine issues of material fact and entitlement to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). In granting Clestra's motion for summary judgment, a district court must view all evidence in a light most favorable to Envirco, and draw all reasonable inferences in Envirco's favor. *See SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1116, 227 USPQ 577, 581 (Fed.Cir.1985) (en banc).

The question of infringement involves a legal analysis, interpreting the scope and meaning of the claims, and a factual analysis, applying the claims to the accused device. *See Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1454–56, 46 USPQ2d 1169, 1172–75 (Fed.Cir.1998) (en banc). This appeal asks this court to review the district court's claim construction. Specifically, this court must review whether the second baffle is a means-plus-function claim element and, therefore, whether the district court properly applied a structural limitation from the written description, that of being "arcuate," to define the scope of the claims.

Section 112, ¶ 6 of title 35 of the United States Code allows patent applicants to claim an element of a combination functionally, without reciting structures for performing those functions. If a claim element contains the word "means" and recites a function, this court presumes that element is a means-plus-function element under § 112, ¶ 6. *See Al–Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1318, 50 USPQ2d 1161, 1166 (Fed.Cir.1999). That presumption falls, however, if the claim itself recites sufficient structure to perform the claimed function. *See id.*

The asserted claims of the '395 patent describe the disputed second baffle element with the term "second baffle means." The word "means," as already noted, invokes a presumption that § 112, ¶ 6 governs the second baffle claim element. The district court recognized this rule and accorded the second baffle element means-plus-function treatment. The district

court, however, did not complete the triggering analysis for § 112, ¶ 6. The district court should have determined whether the claims recite sufficient structure for performing the claimed function, thereby overcoming the presumption of § 112, ¶ 6. *See Sage Prods., Inc. v. Devon Indus., Inc.,* 126 F.3d 1420, 1427–28, 44 USPQ2d 1103, 1109 (Fed.Cir.1997) ("[W]here a claim recites a function, but then goes on to elaborate sufficient structure, material or acts within the claim itself to perform entirely the recited function, the claim is not in means-plus-function format.").

Although using the word "means" to describe the second baffle, the '395 claims also recite sufficient structure to rebut the presumption that the term is in means-plus-function form. The term "baffle" itself is a structural term. The dictionary definition of the word "baffle" is "a device (as a plate, wall or screen) to deflect, check, or regulate flow." *Webster's Ninth New Collegiate Dictionary* 124 (1990). Because the term "baffle" itself imparts structure, meaning a surface which deflects air, its use in the claims rebuts the presumption that § 112, ¶ 6 applies.

Further, the claims describe the particular structure of this particular baffle ("having inner surfaces for directing airflow . . . radially outward . . . and thereafter . . . between said first baffle means and said air filter means"). This recital of structure conflicts with the statutory requirement that means-plus-function claim elements state a function "without the recital of structure." 35 U.S.C. § 112, ¶ 6.

The recital of structure in this claim for the second baffle is similar to the claim element in *Cole v. Kimberly–Clark Corp.,* 102 F.3d 524, 41 USPQ2d 1001 (Fed.Cir. 1996). In that case, this court held that the term "perforation means . . . for tearing" was not a means-plus-function clause, because the claim sufficiently described a structure (i.e., the perforation itself) to perform the function of tearing. *Id.* at 531. Relying on the dictionary definition for the word "perforation," the court construed the term, "perforation means . . . for tearing" to mean "perforations." *Id.* Likewise, in this case the claims recite sufficient structure (i.e. a baffle disposed radially outward from the centrifugal fan, with inner surfaces for directing airflow). Therefore the second baffle limitation is not a means-plus-function claim element. Because the claims recite sufficient structure, including details about the location and formational details about the second baffle, this court holds that the district court erred in construing the "second baffle means" as a means-plus-function claim element under § 112, ¶ 6.

■ Because the "second baffle means" element does not qualify for § 112, ¶ 6 treatment, it is not limited to the structure corresponding to the claimed function as "described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6. Instead, this court construes the claims with standard claim construction rules. Thus, for instance, the specification informs but does not control, the claim construction. Rather, in that process, the claim language itself governs the meaning of the claim. To acquire proper context to understand claim terms, this court also consults the specification, the prosecution history, and where relevant (and not contradictory of intrinsic evidence), extrinsic evidence. *See Pitney Bowes, Inc. v. Hewlett–Packard Co.,* 182 F.3d 1298, 1308–09, 51 USPQ2d 1161, 1167–68 (Fed.Cir.1999); *see also, Scripps Clinic v. Genentech, Inc.,* 927 F.2d 1565, 1580, 18 USPQ2d 1001, 1013 (Fed. Cir.1991).

■ In this case, the "second baffle means" covers a surface for deflecting air. The claim locates the "second baffle means" inside the top and sides of the housing. This distinguishes the "second" from the "first baffle means." The loca-

tion of the "second baffle means" ensures that it directs air inward from the vertical walls of the housing, beneath the first baffle means, and toward the HEPA filter. In the words of the claim, the second baffle means is "disposed radially outward of said centrifugal fan."

The descriptions and figures in the specification support the locational limitations in the claim language. The specification describes in writing and shows in figures the "second baffle means" above the first baffle means, and then wrapping around the edges of the fan enclosure. *See* figs. 1, 2, and 3. Ultimately, the claims (and supporting specification) show that the first and second baffles act together to direct air away from the fan, around the first baffle means, and through the HEPA filter ("guided by said first baffle means towards said second baffle means and thereafter by said second baffle means between said first baffle means and said air filter means.").

The specification depicts several embodiments of the claimed invention. One embodiment includes an arcuate second baffle. Other embodiments include angular second baffles. Thus, while the second baffle means may be arcuate, it is not limited to an arcuate shape. In other words, the arcuate shape is within the scope of the claims, but is not a limitation on the second baffle means. Similarly, the specification discloses baffles constructed of various materials, including metal, plastic, and sound dampening material. Thus, baffles made of these materials are within the scope of the claims, but the descriptive enumeration of those materials in the specification does not, *per se*, limit the scope of the patent's claims to one or more of those materials.

With this interpretation of the "second baffle means," the district court shall on remand proceed to resolve any factual issues in this case. Accordingly this court remands for further proceedings on infringement.

## COSTS

Each party shall bear its own costs.

*VACATED and REMANDED.*