**AIR TURBINE TECHNOLOGY, INC., Plaintiff,**

v.

**ATLAS COPCO AB, Atlas Copco Tools AB, Atlas Copco North America, Inc. and Atlas Copco Tools, Inc., Defendants.**

No. 01–8288–CIV–MARRA.

United States District Court, S.D. Florida.

Sept. 12, 2003.

See also 217 F.R.D. 545.

Ned Roger Nashban, Quarles & Brady, Boca Raton, FL, Richard L. Horn, Gregory M. Smith, Quarles & Brady, Chicago, IL, Casey Keeler Weidenmiller, Ka'imi Lani Jones, Quarles & Brady, Fort Lauderdale, FL, for Plaintiff.

Susan Kohlmann, Brett Lewis, New York City, William Atkins, Guillermo E. Baeza, Benjamin L. Kiersz, McLean, VA, Paul R. Griffin, John C. Dotterrer, San Francisco, CA, Scott J. Pivnick, McLean, VA, for Defendants.

### AMENDED CLAIM CONSTRUCTION ORDER [1]

MARRA, District Judge.

---

1. This Order changes the second full paragraph on page 5 (the concluding paragraph to

THIS CAUSE is before the Court upon the parties' claim construction briefs and the *Markman* hearing held before this Court on August 8, 2003. The Court has carefully considered the patent, the prosecution history, the parties' briefs and the arguments of counsel, and is otherwise fully advised in the premises.

## I. BACKGROUND

 It is the Court's role to construe the claims of the disputed patent. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388–390, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The Court principally looks to the claims made in the patent, the specifications, and the prosecution history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996). Only if these are ambiguous, does the Court look to extrinsic evidence, such as expert affidavits or declarations. *Id.* The claims herein are specific enough to allow the Court to construe the claims without the need for extrinsic evidence. Neither party has asked this Court to consider extrinsic evidence.[2]

The claims in United States Patent Number 5,439,346 involve the braking mechanism in a rotor in a turbine engine, used to power a tool such as a lathe. *See* Exhibit A to Plaintiff's Claim Construction Brief [DE 311] (hereinafter, the " '346 patent"). In order to obtain the '346 patent, the inventor relied upon exhaust pressure of compressed fluid or air to move a brake pad away from the rotor when the fluid or air is present, thus enabling the rotor to turn. When the fluid or air is reduced, the exhaust pressure is reduced, and the brake pad moves back to contact the rotor, thus slowing down and stopping the rotor. The

advantage of this invention is that the brake control valve can be placed in a more convenient location from where it had always been, even to a remote foot pedal for the use of the attached tool. '346 Patent at col. 1–2.

Several claims of the patent were initially rejected by the Patent & Trademark Office ("PTO") due to the prior art of the Peters patent. Exhibit D to Defendant's Claim Construction Brief at bate-stamped page ATT014790 [DE 323]. The inventors amended what became the '346 patent by adding the phrase "responsive to exhaust pressure" in various permutations within the independent claims of the patent. *Id.* at page ATT 014796 et seq.

## II. DISCUSSION

There are two disputed issues raised by the parties and to be decided by the Court in construing the claims. The first issue is whether the braking mechanism claims (independent claims 1, 2, 6, 11, and 13) must be construed to mean *only* responsive to exhaust pressure or just responsive to exhaust pressure. Defendants argue that the word "only" must be added to make sense of what the PTO approved, while Plaintiff argues that its patent includes braking mechanisms responsive to exhaust pressure and other things. The second issue is whether the claims regarding "braking means" fall under the "means-plus-function" test described in 35 U.S.C. § 112, ¶ 6. In this case, the '346 patent uses the term "braking means." This language raises a rebuttable presumption that the claims are means plus function claims. *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1375 (Fed.Cir.2003). However, "this

Section II.A of the order) and paragraph "1." of the Section III (the "Conclusion") to better describe the Court's conclusion and conform the Court's use of language to the language of the patent.

**2.** *See* Transcript of Markman Hearing at pp. 7 (Plaintiff) and 49 (Defendants) [DE 351]

presumption can be rebutted where the claim, in addition to the functional language, recites structure sufficient to perform the claimed function in its entirety." *Id.*

### A. Responsive to Exhaust Pressure

■ In five independent claims in the '346 patent (Claims 1, 2, 6, 11 and 13), the key phrase that the parties' dispute is the scope of the term "responsive to exhaust pressure."[3] The Court starts its analysis with a review of dictionary definitions publicly available at the time the patent was issued. *Intellectual Property Development, Inc. v. UA–Columbia Cablevision of Westchester, Inc.,* 336 F.3d 1308, 1315 (Fed.Cir.2003); *Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.,* 340 F.3d 1298, 1306–07 (Fed. Cir.2003); *E–Pass Technologies, Inc. v. 3Com Corp.,* 343 F.3d 1364, 1367 (Fed. Cir.2003). The dictionary definition of "responsive" gives no indication that something that is responsive to exhaust pressure must be exclusively responsive to exhaust pressure. Rather, "responsive" is defined as "giving response," "answering," "quick to respond or react appropriately" and "sensitive." *See Merriam–Webster's Collegiate Dictionary* 998 (10th ed.1996). "Response" is defined as "the activity or inhibition of previous activity of an organism or any of its parts resulting from stimulation" or "the output of a transducer or detecting device resulting from a given input." *Id.*

Defendants argue that the '346 patent was initially rejected by the PTO. They point out that the patent was subsequently approved only after the phrases "responsive to exhaust pressure" and its variants were added to the claims. As a result,

Defendants contend that the claims of the '346 patent must read to include "only" as a limitation to "responsive to exhaust pressure." *See* Exhibit D to Defendant's Brief at pages ATT014813–14. Defendants also argue that the Peters patent (the prior art which Plaintiff had to overcome to obtain the '346 patent) used intake pressure to shut down the braking mechanism. Therefore, Defendants argue that Plaintiff has disclaimed the use of intake pressure to initiate the braking mechanism. The '346 patent, in Defendants' view, must be limited to braking mechanisms that are "only responsive to exhaust pressure." Plaintiff disagrees with this interpretation, and urges the Court to reject adding the limitation "only" before the relevant "responsive to exhaust pressure" phrases used in its patent.

The Federal Circuit Court of Appeals has recently explained the standard to be applied to Defendant's prosecution disclaimer argument. In *Omega Engineering, Inc. v. Raytek Corp.,* 334 F.3d 1314, 1325 (Fed.Cir.2003), the Court stated: "we have required the alleged disavowing statements to be both so clear as to show reasonable clarity and deliberateness . . . and so unmistakable as to be unambiguous evidence of disclaimer." The Federal Circuit reversed the district court in *Omega Engineering* for including a "novel negative limitation" in its claim construction. The patent at issue in that case involved laser beams used to measure infrared temperature. The patent referred to beams striking the periphery of the energy zone. The district court concluded that the claims required the laser beam to "only strike the periphery of the energy zone" and not strike the center of the zone. The analysis used by the Federal Circuit

---

**3.** The phrase is used in different forms in the five independent claims: "responsive to the absence of said exhaust pressure" (Claims 1 and 13); "in response to said exhaust pressure" (Claims 2 and 11); and "responsive to said predetermined exhaust pressure" (Claim 6). See '346 patent at col. 6–8.

in Omega Engineering is directly relevant to this case. The Court therefore will not read the word "only" into the claims of the '346 patent.

The Court also notes that it cannot read limitations into claims from the teachings of the specifications. *RF Delaware, Inc. v. Pacific Keystone Technologies, Inc.*, 326 F.3d 1255, 1263–65 (Fed.Cir.2003). Thus, the fact that Plaintiff's preferred embodiment of its braking mechanism as described in the specifications teaches a device that only uses exhaust pressure does not mean that the claims of the patent should be construed so as to add the term "only" where it does not exist.

The Court concludes that the plain words of the patent control. A device that has a braking mechanism responsive to exhaust pressure falls within the '346 patent, whether or not such braking mechanism is responsive to something else at the same time.

### B. "Braking Means"

■ Defendants argue that the '346 patent must be construed as a means plus function patent under 35 U.S.C. § 112, ¶ 6. It is undisputed that the '346 patent uses the phrase "braking means." A presumption arises when the term "means" is used in a patent. *Unidynamics Corp. v. Automatic Products International*, 157 F.3d 1311, 1319 (Fed.Cir.1998). Plaintiff argues that it has overcome the presumption of a means plus function analysis because the claims recite sufficient structure, relying

upon *Envirco Corp. v. Clestra Cleanroom, Inc.*, 209 F.3d 1360, 1364–66 (Fed.Cir.2000) and *Cole v. Kimberly–Clark Corp.*, 102 F.3d 524, 531 (Fed.Cir.1996).

■ In deciding whether the presumption has been overcome, the court should determine "whether the claims recite sufficient structure for performing the claimed function. . . ." *Envirco*, 209 F.3d at 1365. The claims at issue all include the term "braking means" and a description of the function that the braking means perform in the apparatus, without a description of any structure in those claims. *See* Claims 1, 2, 6, 11, and 13.[4] This Court concludes that unlike *Cole* and *Envirco*, the claims of the patent at issue do not disclose sufficient structure to overcome the presumption of a means plus function patent.

In *Cole*, the claim language at issue described the structure of the perforation in the claim itself. *Cole*, 102 F.3d at 530 ("perforation means extending from the leg band means to the waist band means through the outer impermeable layer means for tearing the outer impermeable layer means for removing the training brief in case of an accident by the user"). The Federal Circuit concluded that this claim overcame the presumption because it contained structure (term "perforation" itself recites structure) performing the tearing function and the location of the structure. *Id.* In *Envirco*, the Federal Circuit reached a similar conclusion with regard to

---

4. For example, in Claim 1: "braking means, responsive to the absence of said exhaust pressure, for preventing said rotor from rotating;" in Claim 2: "braking means for enabling said rotor to rotate in said housing in response to said exhaust pressure and for inhibiting said rotor from rotating in the absence of said exhaust pressure;" in Claim 6: "braking means, responsive to said predetermined exhaust pressure, for enabling said rotor to rotate in said internal cavity and, in the

absence of said predetermined exhaust pressure, for inhibiting said rotor from rotating;" in Claim 11: "braking means for automatically enabling said rotor to rotate in said housing in response to said exhaust pressure and for automatically inhibiting said rotor from rotating in the absence of said exhaust pressure;" and in Claim 13: "braking means, responsive to the absence of said exhaust pressure, for automatically preventing said rotor from rotating." *See* '346 Patent, col. 6–8.

a claim element of a "second baffle means." The Court stated:

> The term "baffle" itself is a structural term. The dictionary definition of the word "baffle" is "a device (as a plate, wall or screen) to deflect, check, or regulate flow." *Webster's Ninth New Collegiate Dictionary* 124 (1990). Because the term "baffle" itself imparts structure, meaning a surface which deflects air, its use in the claims rebuts the presumption that § 112, ¶ 6 applies. Further, the claims describe the particular structure of this particular baffle ("having inner surfaces for directing airflow . . . radially outward . . . and thereafter . . . between said first baffle means and said air filter means").

*Envirco*, 209 F.3d at 1365. As described above, the claims in the '346 Patent do not contain a description of structure as do the patents involved in *Cole* and *Envirco*

In the '346 Patent, the use of the verb "braking" to describe the means is another distinction between this case and *Colo* and *Envirco*. "braking" is defined in the dictionary as "to retard or stop by a brake." *Merriam–Webster's Collegiate Dictionary* 138 (10th ed.1996). This definition describes a function, not a structure. Plaintiff urges this Court to substitute the noun forro "brake," in order to construe the claim as containing sufficient structure. For the same reasons that the Court agreed with Plaintiff that the term "only" cannot be read to modify "responsive to exhaust pressure," the Court will not substitute the term "brake" into the "braking means" elements of the claims in the '346 Patent. Even if the Court did construe the term to mean a "brake," the term "brake" by itself does not contain sufficient structure. The decisions in *Cole* and *Envirco* did not rely solely on the fact that "perforation" and "baffle" were nouns indicating structure, but rather that the claim language described either additional structure or its location.

■ Plaintiff argues that the Court should look to several dependent claims of the patent, including Claims 4, 5, 8, 9, 10, to find the necessary structure. It is true that these claims describe a rotary apparatus according to independent claims 2 and 6 which "includes" a brake pad (Claims 4 and 8), spring (Claims 5 and 9) and a predetermined number of guide holes (Claim 10). However, Plaintiff does not provide any legal precedent (other than the cases cited above) allowing this Court to rely upon language in dependent claims for corresponding structure to overcome a means plus function presumption. Rather, as Defendant argues, dependent claims must be construed to include all limitations of the independent claims incorporated therein. Therefore, if the independent claims fail to contain sufficient structure to rebut the presumption that they are in means plus function format, the dependent claims cannot "save" such claims from being means plus functions claims.

In addition, the dependent claims in the '346 patent use the term "includes" to describe the brake pad and spring. "Including" and "includes" are considered open terms, meaning other structure is needed to perform the function. *See Altiris*, 318 F.3d at 1376 ("claim language uses 'including'—an open term—which suggests that the two sets of "commands" are not sufficient structure; rather, something else is needed").

Finally, while the specifications of the '346 Patent provide sufficient structure of a braking mechanism consisting of a brake pad having a number of guide holes in which guide pins are received with springs placed over the guide pins, the structure required to overcome the presumption of means plus function format must be in the claim itself. *See* '346 Patent, col 3; *Envirco*, 209 F.3d at 1365.

■■ Having concluded that the claims of the '346 Patent are in means plus function format, the Court must identify "the claimed function and determin[e] the corresponding structure or act disclosed in the specification." *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1308 (Fed.Cir.1998). The function claimed in the '346 patent is the enabling and inhibiting of the rotation of the rotor. The corresponding structure that is linked to this function is the brake pad, the springs, the guide pins and guide holes, as described in col. 3, ln. 22–46 of the '346 Patent. Pursuant to 35 U.S.C. § 112, ¶ 6, the '346 patent shall be "construed to cover the corresponding structure . . . described in the specifications and equivalents thereof." The Court need not decide at this point whether Defendants' allegedly infringing product performs the identical functions with similar structure, as such issues are questions of fact for the jury.[5]

### C. Undisputed Issues

Claim 6 states an element of a "means for creating a predetermined exhaust pressure." The parties agree that this claim is in a means plus function format. As discussed above, this element shall be construed to cover the corresponding structure described in the specifications and equivalents thereof. 35 U.S.C. § 112, ¶ 6. The corresponding structure for this element may be found in the '346 patent in Col. 3, ln. 55–57 and Col. 5, ln. 1–35. *See* '346 Patent.

### III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. A device that has a braking mechanism responsive to exhaust pressure falls within the '346 patent, whether or not such braking mechanism is responsive to something else at the same time, as long as the braking function is caused by the braking mechanism responding to exhaust pressure;

2. The braking means elements in independent claims 1, 2, 6, 11 and 13 are in means plus function format pursuant to 35 U.S.C. § 112, ¶ 6. The function claimed in the '346 patent is the enabling and inhibiting of the rotation of the rotor. The corresponding sufficient structure that is linked to this function is the brake pad, the springs, the guide pins and guide holes, as described in col. 3, ln. 22–46 of the '346 Patent;

3. Because the independent claims are in means plus function format, the dependent claims incorporating these independent claims (Claims 4, 5, 8, 9, and 10) are also in means plus function format pursuant to 35 U.S.C. § 112, ¶ 6. The function claimed in the '346 patent is the enabling and inhibiting of the rotation of the rotor. The corresponding sufficient structure that is linked to this function is the brake pad, the springs, the guide pins and guide holes, as described in col. 3, ln. 22–46 of the '346 Patent;

5. "For literal infringement of a § 112, ¶ 6 limitation, the second step of an infringement analysis begins with determining whether the accused device or method performs an identical function to the one recited in the claim. *See Mas–Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211–12 (Fed.Cir.1998). If the identical function is performed, the next step is to determine whether the accused device uses the same structure, materials, or acts found in the specification, or their equivalents. *See id.* at 1212, 156 F.3d 1206. Whether an accused device or method infringes a claim with a § 112, ¶ 6 limitation, i.e., whether it performs the identical function with the same structure, materials, or acts described in the specification or an equivalent thereof, is a question of fact." *IMS Technology, Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1429–30 (Fed.Cir.2000).

4. Claim 6 states an additional means plus function element of a "means for creating a predetermined exhaust pressure." The corresponding sufficient structure for this element may be found in the '346 patent in Col. 3, ln. 55–57 and Col. 5, ln. 1–35.